in 23-3175 U.S. v. Otuonye. I'll ask counsel to pronounce that for me. So, Mr. Brindley, are you ready to proceed? I am, your honor. Go ahead. My name is Beau Brindley and I represent the dependent appellant, Abubi Otuonye. In Henson 2 and Con 2, this court clearly enunciated the state of the law in the Tenth Circuit following the Supreme Court's decision in Ruan v. United States. All money laundering convictions for Dr. Khan and Dr. Henson were reversed despite being individually and legally accurate because in order to make a determination on the guilt for those counts, it was necessary to refer to the instruction regarding the 841 counts and the definition of an illegal prescription. Well, that's because the money laundering charge required that they actually have committed those offenses, right? Indeed. Here, the health care fraud counts in this case are directly analogous and the reason is because the only basis for health care fraud that was in the indictment or that was argued to the jury or that was even possible was if there was the filling of an illegal prescription and the only way to determine the legality was to go back to instruction number 16, which incorrectly defined what an illegal prescription was. There was no... There's a difference between an illegal prescription and violating the law regarding unlawful prescriptions by doing it knowingly or intentionally. And that wasn't an issue with the money laundering case because the way RICO or the money laundering statute refers to the underlying offense is there has to be a commission of the offense. So, the scienter requirement was already there. Here, I'm not sure why that's necessary. Go ahead. There would be... I'm sorry, your honor. There would be no way for the jury to make an assessment of whether the defendant in this case was guilty of the health care fraud counts without looking at instruction 16 to determine whether the prescriptions were legal or not because the only basis for saying Mr. Ottolenghi committed a crime with respect to Medicare and Medicaid fraud was if he filled prescriptions that he knew to be illegal. But the definition for what it means for them to be illegal harkens back to instruction 16, in which is analogous to the situation that we're dealing with with respect to the money laundering counts in Conn 2 and Henson 2 and the conspiracy charges as well. Except that the defect, I want to get to the defect in instruction 16 at some point, but the defect that you're alleging here is it didn't include the necessary scienter requirement. Yes. But the fraud, the Medicare fraud count did have a scienter requirement. It does. Why doesn't that take care of any problem with the scienter with respect to the distribution count? Because it says knowingly committed the offense essentially, but the problem is knowingly did what? The question is what did he knowingly do? And the only thing that he knowingly would have done is filled a prescription that was illegal, but to figure out whether it's illegal, the jury has to look back to instruction 16 and determine what were these illegal or not. And they had the wrong, they couldn't get a right answer on that based on instruction 16, the knowingly part of the healthcare fraud. It's 16 says it's illegal to do something without scienter. Mm-hmm. And that's what illegal filling prescription is, and that's the basis of the fraud. But the instruction on fraud requires scienter. But scienter of knowledge of what, your honor? That's the problem. It's knowledge of what? Knowledge, well, let's look at instruction 16. For example, knowledge that it was filled outside the usual course of professional practice. Yes. You agree that that needed to be shown, that was an alternative under instruction 16. That's what the Supreme Court says that has to be shown, that he knew it was outside the course, Dr. Hansen knew. He convicted of distribution, but you're saying what did he have to know to be guilty of Medicare fraud? And he needed to know that it was filled outside the usual course of professional practice. That's not what the Medicare fraud instruction said. Well, let me ask you about that, about, and I don't mean to talk over your answer to Judge Hartz, but when you talk about instruction 18, which I assume you're getting to the instruction on the elements, Judge Hartz has asked good questions about the first element. What about the fourth one? The defendant acted with specific intent to defraud. How can you possibly combine the jury's consideration of instruction 16 and 18 without the jury clearly understanding that the pharmacist had to have acted with intent to defraud in order to be guilty of counts three and four? Intent, but the problem is that with respect to intent to defraud, defraud in what way is the question? And the only way that's been issue in the case was by filling a prescription that was illegally written. And the jury would look at whether it was illegally written or not in order to make that determination. I don't think there's any way that we can say with confidence that the jury could just look at 18 and not go back to 16. And if they did go back to 16, that they somehow could combine them in the way that we're talking about combining them now. I don't think there's any way to say with any degree of confidence that a jury is going to be able to do that. And I think this is similar in the Fourth Circuit, there is a case called United States versus Smithers that had a similar argument with respect to an instruction about keeping a stash house. This was a doctor, an opiate doctor too. And they reversed all of the counts in Smithers. And this is in the Fourth Circuit. And in U.S. versus Smithers, there was a scienter requirement for the keeping of the stash house. And the Fourth Circuit said that still doesn't matter because it's ultimately going to require the jury to look back at the definition of what makes the prescription illegal. And if they're misled about that, there's no way that we can know with any confidence that they're going to get this right. I wonder if we're talking about... Oh, you go ahead. No, no, go ahead. I'm just... Okay. I'm sorry, Jay. I wonder if there's maybe a generality in the terminology that we're using. When you say that it was illegally written. Yes. Now, I think when you're saying that you're referring to the controlled substances, but in closing argument, and the prosecutor did say that, I don't know if Mr. Brown or someone else in his office, when there was a change of plea hearing, but of course the district judge didn't accept the plea. And so it goes to trial and in closing argument, the prosecutor specifically says, as Mr. Brown quoted in his brief, that it doesn't have to be the controlled substance. In other words, if the ploy as it was identified in the indictment was to conceal this scheme that the pharmacist had, that he was not turning in to Medicare and Medicaid, the costs for the controlled substances, but he was having Dr. Henson calling out these unnecessary expenses. Now, I don't know that you would say those are illegally written. They're certainly illegal to submit because they did not have a legitimate medical purpose. And that was the $17,000, all of which, as I understand it, was not for reimbursement under Medicare and Medicaid for controlled substances. They were all for the non-controlled. Two things on that. Number one, the district court had a conversation with Mona First Trial Counsel, which we cited in our brief about the question of whether or not this was referring to the Medicaid frauds, referring to the non-controlled substances. That was the change of plea hearing, right? Yes. And she said it was the controlled substances that they had been talking about. The indictment also references the controlled substances only. It doesn't talk about the non-controlled substances. But anyway, regardless of which you go, if you're trying to decide whether or not the prescription of the non-controlled substances was within the usual course of professional practice, then the jury is likely to look back to instruction 16, even if they're talking about non-controlled substances. The fact that there is this instruction that talks about what it requires in order to have a prescription written that is in line with the law, which instruction 16 does, has to be in the usual course of professional practice. It has to be for legitimate medical purpose. The idea that the jury is not going to confuse that or the assumption that they're not going to confuse that in this set of circumstances is hard to believe when the totality of the argument of this case and the presentation of this case was that the prescriptions for controlled substances were, and I say illegally written, were written outside the usual course of professional practice and the pharmacist filled them. That means that he's guilty. Was any of the $17,000 that the prosecutor relied on at trial, was any of that for reimbursement for the controlled? The $17,000 that was discussed at the trials that you're asking me about? Right. I honestly don't know the answer to that question. Maybe Mr. Brown does, Your Honor. I don't know the answer. Well, Mr. Brown, I think he's already said it in his brief. He said it was all for the non-controlled substances. But even if it is, the problem is making a determination that the jury was not going to be impacted and the decision was not going to be impacted. If the decision was impacted about all of the controlled substance prescriptions and the jury easily, there's two theories that we're suggesting. Maybe they decided on non-controlled, maybe they decided on controlled. There's no way for us to determine which one they decided on. And if they decided on- How can you show prejudice under a prong to a strict one? We show prejudice by showing that the jury was not, there's two possible theories. One of those theories would require the jury to go back to an instruction that included an omitted element. And as this court said in Hanson 2 and Con 2, an omitted element of that kind, the only way that you could find that there wasn't prejudice would be if you could find beyond a reasonable doubt that it was basically an uncontested or uncontestable issue. And the government has an argument, but uncontested in this case. Let me back up. I mentioned I'd get to this later and we're almost out of time, so I want to raise this issue. You say that instruction 16 was incorrect because it omitted an essential element, is that correct? I do. That's the only thing wrong with it, essentially. That's the only thing you've raised about it. That's correct. And what is the element that's missing? Knowledge and intent. Knowledge of what? Knowledge that the prescription is outside the usual course of professional practice, knowledge that the prescription is without a legitimate medical purpose. Okay, so would you look at instruction 16 and look at the sentence? Because it does require knowledge. It says, in other words, if the government proves beyond a reasonable doubt that a prescription was knowingly dispensed or distributed, numeral one in parentheses, not for a legitimate medical purpose, or two in parentheses, outside the usual course of professional practice, then the exception to the controlled substance act does not apply. It clearly requires knowingly outside the usual course of professional practice. The cases you rely on do not have number one and number two in the sentence. And that's why it was ambiguous whether the second part of the sentence outside the usual course of professional practice was modified by knowingly. The instruction in the Kahn case is almost identical. Yeah, except it deletes number one and number two, which eliminates the ambiguity. Does it not? No, I don't think it eliminates the ambiguity. You can read. Let me ask. I just want to make sure I understand your position. You're saying when it says, was knowingly dispensed or distributed, numeral one in parentheses, not for a legitimate medical purpose, comma, or numeral two in parentheses, outside the usual course of professional practice, then the language knowingly dispensed, knowingly, does not modify what's after number two? I think knowingly can just apply to the distribution. And there's been lots of argument in the case law about this knowingly distributed. Yeah, he knows that he distributed. But the question is, then does knowingly also follow through to number one and number two? Right. If it's before number one and number two, that makes it very clear that it applies. When you say he must do, he must intend to do number one or number two, then it clearly requires knowingly for both purposes. What was missing in the precedence you're relying on is the numeral one and numeral two, which eliminates the ambiguity. You disagree? Yes, because in the Kahn case, they said that it requires more than just that knowledge. In Kahn, the Tenth Circuit said that what is required is knowledge that it is illegal. If you go back and look at Kahn, Kahn says that the defendant must know that the prescription is written outside the usual course of professional practice and must know that doing so was illegal. So it's a higher degree of scienter than just the knowledge that's written in Nontructin 16, if we take the Kahn case for what it says. Okay. So you're saying that the scienter required in Kahn is not just knowing that it's outside the usual course of professional practice, but knowing that dispensing outside the usual course of professional practice is unlawful. You're saying Kahn requires that also? Yes, because a doctor could know, if I could finish just this question. Yes, please, please. Because if a doctor can know that he's writing a prescription that's outside of the usual course, but believe he still has the authority to do that under the Controlled Substances Act, in order to be guilty, according to Kahn too, he has to know that he doesn't have the authority. Kahn too is not about knowledge of those two prongs. It's about knowledge that he was unauthorized, and that's what's completely missing. Knowledge of unauthorization is what's going on in Kahn too, and that is nowhere to be found in Instruction 16, and there's no way the jury could figure that out when assessing these healthcare fraud counts. Knowledge of unauthorization is different from knowledge of being outside the course. Okay. Okay. I think I understand your point there. Thank you. And with that, I've exhausted my time. Thank you, counsel. Mr. Brown? Can the panel hear me? Yes. Okay. Good morning, Your Honors. James Brown for the United States. I'd like to start with an issue that the panel did not touch on during my colleague's presentation, which is the issue of the waiver of the claim, that we're now considering whether or not his initial 2255 claim even brought up any challenged accounts three and four. We've that claim in an untimely manner. His claim of ineffective assistance related exclusively to Instruction 16, and Instruction 16 was relevant only to counts one and two. It was not relevant in any way, shape, or form to counts three and four, and in fact, the district court gave an instruction telling the jury in Instruction 5 that what they decided on one count did not require them to make a decision on another count. That's Instruction 5. We think Instruction 5 basically told the jury that counts three and four were not parasitic on counts one and two. There's no other way to read Instruction 5. He didn't object to Instruction 5 below at any point, and he didn't object on appeal. He doesn't object now. That's a correct statement of the law, and it basically says that counts three and four are not parasitic on counts one and two. That basically binds his whole argument. Well, the judge also instructed the jury on paragraph 48 of the indictment that alleges a scheme to control health care fraud, quote, by distributing and dispensing controlled substances illegally that, you know, you know, even crediting your point about Instruction 5 about the difference in the counts, paragraph 48 of the indictment, according to Appellant's counsel, does make counts three and four parasitic on counts one and two explicitly. What's wrong with that argument? Well, first of all, that argument is outside the scope of the Certificate of Appealability. That's basically a variance argument that he should have raised on direct appeal to challenge counts three and four. He did not. He raises that the first time in his brief here. He didn't raise it below at any point. That's basically sort of a perfunctory argument raised now. What we have up to this point was we have Instruction 5, which says counts three and four are not parasitic on counts one and two. And then what's wrong with that argument, if you want to get past the fact that it's not even cognizable in this proceeding, is the fact that we, in order to determine whether somebody is guilty, you look at the instructions given to the jury and the elements in those instructions to consider the guilt. Here he didn't object to the instructions in counts three and four. Counts three and four allowed the jury to determine whether or not he engaged in a scheme to defraud and had specific intent to defraud. The jury could have looked at, as the court pointed out in my colleague's presentation, the non-controlled substances for that, which had nothing to do with violations of the Controlled Substances Act. Can I test that a little bit, Mr. Brown? And so let's say I'm a jury and I hear Judge Belgrin instruct on, you know, read aloud paragraph 48, read aloud Instruction 5, 16, and 18. And I, as a jury, am thinking, you know, why would it be unreasonable for me as a juror to think, okay, well, we do consider the counts separately, but when I decide whether or not the pharmacist, you know, defrauded Medicare and Medicaid, I am looking at whether or not he distributed and dispensed controlled substances illegally. That's the illegal distribution. So his argument that counts three and four are parasitic seems credible, irrespective of your argument about considering the counts separately. Yes, you consider the counts separately, like in any case, but in this particular case, the judge seemed to explicitly make three and four parasitic on one and two. What's wrong with that? Well, the jurors were not allowed to disregard Instruction Number 5 under any circumstance. Or the Instruction Reading Aloud 48. Well, that was basically sort of background given in the indictment, but the jurors weren't allowed to disregard the instructions and the instructions didn't require that. But also keep in mind, again, this is a variance argument that should have been raised under- Yeah, I think that's where I'm maybe asking my question inartifully. I'm not talking about a variance argument. The whole theory of the ineffective assistance based on prong two of Strickland that the appellant is making is that counts three and four are parasitic on counts one and two. That's the theme of the appellant's counsel, as I understand it, maybe wrongly. And so I don't care. I don't think Mr. Ridley cares of whether or not there was a variance from the indictment, but we're all talking about instructions and how the jury is going to process those instructions. That's what I'm trying to get at. Right. And my response is the jury was not allowed to ignore Instruction Number 5, which told them that counts three and four were not parasitic on counts one and two. They were not allowed to ignore that instruction. So they may have considered that as background information, but that doesn't mean they were allowed to ignore Instruction Number 5 and they weren't allowed to ignore it. And how do we get around? How do we get around con now? Con your honor, your honor, in my colleagues presentation, I think pointed out well, or was it Judge Hart pointed out how we get around con and Henson. It's very easy in Henson. The money laundering counts were parasitic as a matter of law on the drug counts because the money laundering proceeds had to come from a specified unlawful activity. And the specified unlawful activity was the conspiracy charge, the conspiracy drug charge. That's that's parasitic as a matter of law. He's claiming parasitic based on basically evidentiary overlap. And that is not controlling as to whether a count is parasitic. You look at you look at the an element space test, which is basically what Henson did. Those were the money laundering counts for parasitic as a matter of law, as this as the panel has already pointed out. Here, there were not. You think con was was correctly decided then? We think con was correctly decided, but if you go to pages 1321 and 1322 of con, they the the the court finds that the counts that were the counts that were related to the to the conspiracy conviction that was overturned were basically parasitic on that conspiracy conviction as a matter of law. The 924 C, the money laundering. I mean, a money laundering requires a specified unlawful activity as an element of defense. The specified unlawful activity was conspiracy to distribute the drugs. That's parasitic. Parasitic as a matter of law. And it's it went the same way for some other accounts of con, too. So that that that doesn't really help him. It doesn't get him anywhere for this argument. But let me let me finish up, if I may, on the waiver and then I'll move to the merits. Basically, the question in here is whether the district court abused its discretion in denying defendants defendants claim as to counts three and four. And we have argued that the defendant waived that claim. And that claim is also successive under this court's law. And the court, the district court cannot abuse its discretion by failing to consider a waived claim or successive claim that it does not even have jurisdiction to consider. Therefore, there's no abuse of discretion. The court found that it was untimely presented. The court said that would be a sufficient basis by itself to not consider the claim. But the court went on to address the merits. There's no abuse of discretion in not considering a successive claim that the court did not even have jurisdiction to adjudicate. Now, in making that argument, Mr. Brown, or making that rationale, did Judge Milgrim commit a factual error in the in the denying the motion to reconsider? He said that that the appellant had or the defendant had not made that argument until the motion to reconsider. I think we all agree. And you've acknowledged in your briefing that he did include that in his reply brief before the motion to reconsider. And, you know, maybe Judge Milgrim would have said it was too late to submit that in the reply brief. But that's not what he said. He said that he didn't submit that argument at all until the motion to reconsider. That's two different things. And that's actually inaccurate, isn't it? Well, OK, what I'm relying on is Supplemental Volume 2, page 83 and 84. And wait, wait, I'm sorry, Supplemental Volume 2, page 85 and 86. So if any fact inaccuracy should be judged against those pages, what I'm trying to use those pages is to show the proposition that he did not put on any evidence or argument as to counts three and four. And at the evidentiary hearing, he says this alone is enough to deny defendants motion as a motion for reconsideration is an improper place to assert arguments for the first time. And that's wrong. He submitted it before the motion to reconsider. He submitted it in the reply brief. Well, OK, then I see what the court is saying. I wasn't understanding what the court was saying. I see what the court is saying. OK. Anyway, it still doesn't take away from my main point. The claim was untimely presented and the court did not abuse its discretion in rejecting it on that basis. The reply brief was too late to bring it anyway. The reply brief was several months late and the reply was filed on March 17, 2023. His initial claim was brought on August 2, 2022. That's when he was required to bring it. So it was still too late, even if it was raised in the reply brief. The factual inaccuracy of the district court is irrelevant here. So no abuse of discretion in denying a claim that is out of time, waived and successive. That's the major point. But let me move to the merits. First of all, I think we've shown how his reliance on Henson and Kahn is completely inept. Those cases had had the money laundering counts were parasitic as a matter of law. Here, the health care fraud counts were not parasitic as a matter of law. Count five instructed that they were not parasitic as a matter of law. The jury was required to obey that instruction. Number two, there was the the elements, as I think Judge Hartz pointed out, in counts three and four were materially different in the elements of counts one and two. The jury had the opportunity to judge the evidence in accordance with the jury instruction on instruction 18, to which defendant did not object below or now at any time. And the jury considered the evidence and found that he basically committed to devise a scheme to defraud and have a specific intent to defraud because he filled prescriptions that were illegitimate. There was substantial testimony to show that the prescriptions were illegitimate. Corby Harsha, whose testimony we I think we put on on page 54 in our brief, talked about how the prescriptions were medically unnecessary and therefore illegitimate. We showed his intent and he even during his evidentiary presentation at trial wrote, at least in closing argument, admitted that Henson made illegitimate prescriptions. He didn't contest Henson's scienter at any time and that was sort of part of his argument, that he was tricked by Henson who was devious. That was his defense. Ignatiac, the defendant relies on the Ignatiac case stating that Ignatiac controls this, it does not control that. Ignatiac is a 2012 case. The Rwan issue was not even there. Ignatiac does not have this competition between the Rwan instruction and healthcare fraud instruction and comparing the elements and comparing the evidence and seeing how the evidence fits within those elements, those two different things for purposes of deciding whether there was any Rwan error. The issue in Ignatiac was whether a confrontation clause violation affected all counts. That's not what we have here and to the extent that Ignatiac talks about evidence relating to the drug counts, here we don't have a pure Controlled Substances Act scheme to defraud because our scheme to defraud for the healthcare fraud counts on three and four involves non-controlled substances as we point out in our brief and as we argue to trial. So basically the Controlled Substances Act doesn't even affect Mr. Atunia's dispensing of the non-controlled substances as part of a scheme to defraud. I think that really covers most of what I want to say. I'll take any questions at this point if the court has any. Thank you, Mr. Brown. I don't have a question. It doesn't look like any of us have a question at this point. Okay, thank you. So the case is submitted. Counselor Hughes, thank you gentlemen.